UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BLOCK ONE MARINE, INC.                    CIVIL ACTION

VERSUS                                         No. 08-4267

BASIC MARINE, INC.                              SECTION I

**ORDER AND REASONS**

The defendant, plaintiff in counterclaim, and third party plaintiff, Basic Marine, Inc. ("Basic"), has filed a motion[1] for partial summary judgment. The plaintiff and defendant in counterclaim, Block One Marine, Inc. ("Block One") has filed an opposition.[2] For the following reasons, the motion is **DENIED**.

**BACKGROUND**

Block One and Basic entered into a towage agreement whereby Block One would tow two barges for Basic from New Orleans, Louisiana to two locations in Washington State.[3] The contract provided that Basic would pay specified amounts to Block One upon reaching each of several stipulated milestones in the journey.[4] The agreement states that when Block One verbally verified to Basic that the tug and tow were twelve hours from arrival at the Seattle Sea buoy, Basic was required to pay Block One a sum of $117,500.00.[5] The relevant contractual provision regarding the timing of payment reads:

---

[1] R. Doc. 21.
[2] R. Doc. 25.
[3] The two barges were towed to Submarine Base Bangor, Washington, Keyport-Bangor Docks and Puget Sound Naval Shipyard, Bremerton, Washington. R. Doc. 1-1, p. 2.
[4] *Id*.
[5] *Id*. This milestone is the third of four milestones in the agreement. *Id*.

1

> [Basic] shall make the above scheduled payments no later than the next banking business day. Failure to make any of the payments as scheduled will cause the tow to delay. If there is any delay as a result of [Basic's] failure to make payment [Basic] shall pay [Block One] demurrage[6] . . . due immediately.[7]

The agreement further provided that "[a]ll payments required to be made by [Basic] under this agreement are to be made by bank wire transfer" to Block One's account at First Bank & Trust.[8]

On Friday, November 23, 2007, the final milestone was reached and Block One notified Basic of this achievement.[9] Basic instructed its bank to transfer the agreed upon funds on Monday, November 26, 2007.[10] Block One's account was credited on the following day, Tuesday, November 27, 2007.[11]

Basic filed this motion for partial summary judgment to dismiss all claims brought by Block One against Basic for demurrage damages.[12] Basic argues that it timely made payment on the next "banking business day," which was Monday, November 26, 2007, as neither Saturday nor Sunday are "banking business days."[13] Moreover, Basic argues that its obligation to "make payment" was fulfilled when it initiated the wire transfer.

Block One argues that Basic did not comply with the contract and that payment was late because it was not received on Saturday, November 24, 2007, the next "banking business day."[14] In addition, Block One argues that "make payment" means to complete payment and that Basic

---

[6] Demurrage is set at "$550.00 per hour for Tug." *Id*. at p. 1.
[7] *Id*. at p. 2.
[8] *Id*.
[9] R. Doc. 1-2, p. 3.
[10] R. Doc. 21-2, p. 3.
[11] R. Doc. 25, p. 1.
[12] The motion for partial summary judgment does not address Block One's claim against Basic for additional towage allegedly owed pursuant to the terms of the agreement. The motion also does not address Basic's counterclaim against Block One for damages, or Basic's third party plaintiff claim against One Beacon Insurance Company. *See* R. Doc. Nos. 1, 8.
[13] R. Doc. 49, pp. 3-4.
[14] R. Doc. 25, pp. 3-4.

fulfilled its obligation to do so only when Block One's bank received the funds or, alternatively, when the funds were credited to Block One's bank account.[15]

## DISCUSSION

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such

---
[15] *Id.* at pp. 1, 3. Block One claims that as a result of Basic's breach of contract, it is entitled to $39,600.00 ($550.00 per hour for seventy-two hours of delay) demurrage damage. *Id*. at p. 4.

3

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B. Contract Interpretation

In a towage agreement, the general rules of contract interpretation apply. *See Marine Overseas Servs. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986); *United States ex rel. E. Gulf v. Metzger Towing*, 910 F.2d 775, 779 (11th Cir. 1990)(citing A. Parks, The Law of Tug, Tow, & Pilotage 38 (1982)). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract so as to give them effect without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)(citing *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Capozziello v. Brasileiro*, 443 F.2d 1155, 1159 (2d Cir. 1971)).

"As long as the words of a contract as a whole are clear and explicit and lead to no absurd consequences, such that ambiguities can be resolved as a matter of law without looking beyond the four corners of the document, the contract is unambiguous and no further interpretation may be made in search of the parties intent." *Mobil Exploration & Producing v. A-Z/Grant Int'l Co.*, No. 91-3124, 1992 U.S. Dist. LEXIS 11766 at *19 (E.D. La. July 28, 1992)(citing *Carpenters Amended & Restated Health Ben. Fund v. Holleman Constr. Co.*, 751

4

F.2d 763, 766 (5th Cir. 1985); *E.g. United States Postal Workers Union*, 922 F.2d 256, 260 (5th Cir. 1990, cert denied, 112 S.Ct. 297 (1991)).

"In some cases, however, even by looking at the entire document, ambiguities cannot be resolved – the document as a whole is ambiguous. To resolve these ambiguities, a court can no longer rely solely on the language of the contract to determine the parties' intent, and must look to extrinsic or parol evidence." *Carpenters*, 751 F.2d at 766. Where a Court must consult extrinsic or parol evidence, questions of contract interpretation involve questions of fact that preclude summary judgment. *Id; Mobil Exploration*, 1992 U.S. Dist. LEXIS 11766 at *19.

### i. "Banking Business Days"

The contract between Block One and Basic does not define "banking business day." There is no precedent in admiralty law defining the term. The parties agree that Louisiana law may be applied to the extent that it does not conflict with federal admiralty law.[16]

While "banking day" and "business day" are defined by various federal banking regulations and state commercial statutes, none of these sources define the term "banking business day." The C.F.R. defines "banking day" as "that part of any business day on which an office of a bank is open to the public for carrying on substantially all of its banking functions." 12 C.F.R. § 229.2(f). Similarly, La Rev. Stat. Ann. § 10:4-104(a)(3) defines "banking day" as "the part of a day on which a bank is open to the public for carrying on substantially all of its banking functions." In addition, Black's Law Dictionary defines "banking day" as "banking hours on a day when a bank is open to the public for carrying on substantially all its banking functions" and "a day on which banks are open for banking business." BLACK'S LAW DICTIONARY 116 (9th ed. 2009).

---

[16] R. Doc. 50, p. 2; R. Doc. 49, p. 4.

The C.F.R. defines "business day" as "a calendar day other than a Saturday or a Sunday" 12 C.F.R. § 229.2(g). Black's Law Dictionary defines "business day" as "[a] day that most institutions are open for business, [usually] a day on which banks and major stock exchanges are open, excluding Saturdays, Sundays, and certain major holidays." BLACK'S at 454.

Block One argues that Saturday, November 24, 2007 was the next "banking business day" and that Basic should have made payment on this day.[17] Basic contends that Monday, November 26, 2007 was the next "banking business day" because the term does not include Saturdays and Sundays.

In support of its argument that Saturday was not a banking business day, Basic submitted an affidavit by its controller stating that Basic's bank's commercial and wire transfer departments were closed on Saturday, November 24, 2007 and Sunday, November 25, 2007.[18] Basic argues that because its bank was not open, Saturday could not possibly be a banking business day for purposes of the parties' agreement.

It is unclear whether the term "banking business day" as used in the contract includes Saturdays. Because there is more than one reasonable interpretation of "banking business day" the Court finds that the contract is ambiguous and summary judgment is not appropriate.

*ii. "Make Payment"*

The parties do not define the term to "make payment" anywhere in the contract. Basic argues that, as used in the contract, to "make payment" means to initiate the wire transfer.[19] Block One argues that to "make payment" means to complete the wire transfer. Block One argues that Basic's obligation was only satisfied when Block One's bank accepted the obligation

---

[17] R. Doc. No. 25, pp. 3-4.
[18] R. Doc. No. 21-1, pp. 3, 12-14.
[19] R. Doc. 49, pp. 3-4.

from Basic's bank to pay Block One[20] or, alternatively, when the funds were credited to Block One's bank account.[21]

In support of its argument, Block One relies on the definition of a "funds transfer"[22] in LSA-R.S. 10:4A-104(a),[23] as follows:

> [T]he series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. *A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.*[24]

LSA-R.S. 10:4A-104(a)(emphasis added). However, it is far from clear that "make payment," as used in the contract, equates to "to complete a funds transfer." Therefore, the Court does not find that definition controlling.[25]

The Court cannot divine whether the parties intended "make payment" to mean "to initiate" or "to complete" payment. The Court finds that there is more than one reasonable interpretation under the agreement. As such, the contract is ambiguous, precluding summary judgment at this stage.[26]

---

[20] R. Doc 25, p. 3.
[21] R. Doc. 25, p. 1.
[22] A "wire transfer" is also known, more generally, as a "funds transfer." *See* LSA-R.S. 10:4A-104, cmt. 6.
[23] LSA-R.S. 10:4A-104 was adopted using the same language found in U.C.C. § 4A-104.
[24] 12 C.F.R. § 229.10(b)(2) has a similar definition for when "electronic payments" are received.
[25] Even assuming that this is the correct interpretation, Block One has not provided evidence showing when Block One's bank accepted the payment order.
[26] The case law cited by the parties in support of their positions, although not herein discussed, are distinguishable on their facts.

7

Accordingly, and for the reasons stated above,

**IT IS ORDERED** that Basic's motion for partial summary judgment is **DENIED.**

New Orleans, Louisiana, April 5, 2010.

                                               **LANCE M. AFRICK**
                                   **UNITED STATES DISTRICT JUDGE**